Filed 1/26/15  P. v. Pierce CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE


**THE PEOPLE,**

    **Plaintiff and Respondent,**                **A138870**

    **v.**                                  **(San Mateo County**
                                           **Super. Ct. No. SC076789A)**

**RANDALL BLAINE PIERCE,**

    **Defendant and Appellant.**

_____/

At his initial arraignment, appellant Randall Blaine Pierce requested permission to represent himself.  (*Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).)  He completed and signed a form entitled "Waiver of Right to Counsel and Order Permitting Appearance in Propria Persona" advising him of the risks of self-representation.  After confirming Pierce understood the consequences of self-representation listed on the form, the court allowed Pierce to represent himself.  A jury convicted Pierce of failing to register as a sex offender within five working days of moving (Pen. Code, § 290.011, subd. (b))[1] and failing to register as a sex offender within five working days of his birthday (§ 290.012, subd. (a)) and found true prior conviction allegations.  The court sentenced Pierce to state prison.

---

[1]    Unless noted, all further statutory references are to the Penal Code.

1

Pierce appeals. He contends: (1) the record fails to demonstrate he knowingly and intelligently waived his right to counsel; and (2) the court failed to readvise him of his right to counsel after the preliminary hearing and obtain a new waiver of counsel as required by sections 859 and 987. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The People charged Pierce with willfully failing to register as a sex offender. (§ 290.011.) At his initial arraignment, the following colloquy occurred between the commissioner and Pierce:

"THE COURT: Randall Pierce, line 15. He is present in custody. No. He doesn't want a lawyer. Do you have the forms filled out?

"[PIERCE]: No, ma'am. Verbal threat.

"THE COURT: What?

"[PIERCE]: Verbal threat, please.

"THE COURT: I can't understand you. What did you say?

"[PIERCE]: A verbal threat, *Ferrata* [*sic*] motion.

"THE COURT: All right. So do you want to go pro per in this matter?

"[PIERCE]: Yes, ma'am.

"THE COURT: Did you fill out the pro per form?

"[PIERCE]: No, ma'am.

"THE COURT: You need to do that then we will call you back.

"[PIERCE]: All right.

"THE COURT: Is this a third strike?

"[PROSECUTOR]: Yes.

"(Whereupon, the matter was passed.)"[2]

Pierce completed and signed the form entitled "Waiver of Right to Counsel and

---

[2] The commissioner's abrupt "No" at the beginning of the initial arraignment suggests the commissioner and Pierce may have had a discussion, on or off the record, before the transcribed proceedings.

2

Order Permitting Appearance in Propria Persona."[3]  By signing the form, Pierce agreed he read it, and understood: (1) he was entitled to an attorney at all stages of the proceedings; (2) he could change his mind and request a lawyer; (3) the court considered it a mistake for him to represent himself; and (4) there were "numerous dangers and disadvantages to self-representation[.]"  The space for "the maximum sentence for the offense" was left blank.

 After Pierce completed the form, the following colloquy occurred:

---

[3]     The form provided: "I, the undersigned, understand that I have a right to be represented by a lawyer at all stages of the proceedings and, that if I cannot afford a lawyer, to have the Court appoint one for me at no cost to me.  I understand: [¶] 1. I could change my mind and retain a lawyer to represent me or petition the Court for appointment of a lawyer to represent me or to assist with my defense; [¶] 2. That no postponement would be permitted at any time during the proceeding for the reason that a lawyer was newly brought into the case; [¶] 3. That the Court may and will terminate self-representation if I deliberately engage in serious and obstructionist misconduct before the court or in any proceeding; [¶] 4. That the Court considers it a mistake for me not to accept or employ counsel to represent me; [¶] 5. That if I am allowed to represent myself, I must follow all legal rules applicable to the trial of any criminal action; [¶] 6. That there are numerous dangers and disadvantages to self-representation, including the following: [¶] (a) The law provides for numerous pretrial motions available to defendants, which are of a technical nature, the advantage of which I would lose if allowed to represent myself; [¶] (b) My vocabulary may impede clear communication with the Court and opposing counsel; [¶] (c) Judges will not act on my behalf in asserting objections or in making appropriate motions where ordinarily it is the duty of a lawyer to call such matters to the Court's attention; [¶] (d) The District Attorney will not assist in the defense of the case; [¶] (e) The rules of law are highly technical and will not be set aside because I represent myself; [¶] (f) I may waive constitutional, statutory, and common law rights unknowingly; [¶] (g) If I am in custody, it would be difficult for me to locate witnesses, interview them, prepare [subpoenas], and have them served; [¶] (h) I may, in effect, conduct a defense which is ultimately to my own detriment; [¶] 7. That the maximum sentence for the offense is _____ [¶] 8. That, in spite of my best efforts, I will not be able to claim afterwards I was inadequately represented by myself. [¶] I have read and fully understand all of the rights and matters set forth above.  With all of the above in mind I wish to waive my right to a lawyer and wish to represent myself."

"THE COURT: All right. So let's recall line 15, Randall Pierce. He is present in custody. And do you understand you are representing yourself and all of the consequences on this form?

"[PIERCE]: Yes, ma'am.

"THE COURT: And you wish to proceed going pro per status?

"[PIERCE]: Yes, ma'am.

"THE COURT: All right. So I will grant you pro per status. And do you waive formal reading and advice of rights?

"[PIERCE]: I do. But I don't waive being arraigned by a commissioner rather than a judge."

The commissioner signed an order stating: "Whereas Defendant appeared personally in Department 33 of the above-entitled court and moved he be permitted to represent himself in propria persona, without the assistance of counsel, the Court inquired into the defendant's education and understanding and the Court finds the Defendant has made a knowing and intelligent waiver of counsel and a knowing and intelligent decision to represent himself. The Court allows the Defendant to appear in propria persona."

A judge entered the courtroom and asked, "Mr. Pierce, you are representing yourself?" Pierce replied, "Yes, sir." The court read the charges and Pierce pled not guilty. Pierce requested a "[s]peedy trial and discovery[.]" The prosecution amended the complaint and Pierce represented himself at the preliminary hearing, where he cross-examined a prosecution witness, conducted direct examination, and asserted objections. At the conclusion of the preliminary hearing, the court held Pierce to answer the charges. The prosecution filed an information and Pierce was arraigned.

At a pretrial hearing, Pierce confirmed he had represented himself since his arraignment and "want[ed] that to continue." He requested an attorney for the "narrowly defined purpose" of helping him testify at trial. The court granted the request and confirmed Pierce wanted to continue representing himself. Pierce represented himself at a motion in limine hearing, where the parties discussed Pierce's maximum sentence and the prosecution's plea offer. Pierce rejected the plea offer, made a motion in limine, and

4

objected to certain evidence offered by the prosecution. The court confirmed Pierce had chosen "to represent himself" and observed, "you have obviously proven to a judicial officer that you're capable of representing yourself." Pierce remarked, "I don't need fancy clothes or a highfalutin lawyer."

At trial, Pierce cross-examined prosecution witnesses and questioned two defense witnesses. He made an opening statement, testified in his defense (with his advisory attorney conducting questioning), and made a closing argument. A jury convicted Pierce of failing to register as a sex offender within five working days of moving (§ 290.011, subd. (b)) and failing to register as a sex offender within five working days of his birthday (§ 290.012, subd. (a)) and found true various prior conviction allegations. The court denied Pierce's new trial and *Romero* motions[4] and sentenced him to five years and four months in state prison.

## DISCUSSION

### I.

*Pierce Knowingly and Intelligently Waived His Right to Counsel*

Pierce contends the court erred by permitting him to represent himself pursuant to *Faretta, supra,* 422 U.S. 806, because the "record fails to show that he knowingly and intelligently waived" his right to counsel. "A criminal defendant has a right, under the Sixth Amendment to the federal Constitution, to conduct his own defense, provided that he knowingly and intelligently waives his Sixth Amendment right to the assistance of counsel. [Citations.] A defendant seeking to represent himself 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citation.]' [Citation.] 'No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation.' [Citation.] Rather, 'the test is whether the record as a whole demonstrates that the defendant understood the

---

[4]    *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. The court also denied Pierce's motion for compulsory process and a section 1181 hearing, and several habeas corpus petitions. At the hearing on Pierce's new trial motion, the court observed "I think we reached the point where I'm almost convinced that you're trying to game the system."

disadvantages of self-representation, including the risks and complexities of the particular case.' [Citations.]" (*People v. Blair* (2005) 36 Cal.4th 686, 708 (*Blair*), overruled on another point in *People v. Black* (2014) 58 Cal.4th 912.)

"The failure to give a particular set of advisements does not, of itself, show that a *Faretta* waiver was inadequate. Instead, '[t]he burden is on appellant to demonstrate that he did not intelligently and knowingly waive his right to counsel. . . . [T]his burden is not satisfied by simply pointing out that certain advisements were not given.' [Citations.]" (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1058-1059 (*Weber*); *People v. Sullivan* (2007) 151 Cal.App.4th 524, 545 (*Sullivan*).) We independently examine the entire record to determine whether Pierce knowingly and intelligently waived his right to counsel. (*People v. Burgener* (2009) 46 Cal.4th 231, 241 (*Burgener*); *People v. Conners* (2008) 168 Cal.App.4th 443, 454 (*Connors*).)

Pierce claims his *Faretta* waiver was not knowing and intelligent because the court failed to "conduct[ ] an extensive colloquy" before allowing him to waive his right to counsel. This argument is foreclosed by *Blair.* There, the defendant argued his *Faretta* waiver was invalid because the trial court failed to make a "'searching inquiry'" before granting his request to waive counsel. (*Blair, supra,* 36 Cal.4th at p. 709.) The *Blair* court disagreed and concluded the court's oral advisements apprised the "defendant of the dangers and disadvantages of self-representation." (*Id*. at p. 708.) The court also noted the defendant "acknowledged, in writing, that he would have to handle pretrial, trial, and many posttrial matters himself without the assistance of an attorney, and that he would have to comply with all substantive and procedural rules, which could be quite technical. He thus demonstrated an understanding of the risks and complexities of his case." (*Id.* at pp. 708-709, fn. omitted.)

The *Blair* court explained, "That these latter warnings and understanding were expressed only in writing makes no difference in our determination. [Citation.] The . . . propria personal advisement form (sometimes referred to as a *Faretta* form) serves as 'a means by which the judge and the defendant seeking self-representation may have a meaningful dialogue concerning the dangers and responsibilities of self-representation.'

6

[Citation.] The court might query the defendant orally about his responses on the form, to create a clear record of the defendant's knowing and voluntary waiver of counsel. [Citation.] The failure to do so, however, does not necessarily invalidate defendant's waiver, particularly when, as here, we have no indication that defendant failed to understand what he was reading and signing. To the contrary, defendant demonstrated his ability to read and write in numerous pro se filings before the court. Defendant also appeared to be of at least normal intelligence and spoke articulately in court. The last superior court judge who considered defendant's request for self-representation . . . found that defendant was 'in full control of his faculties' and was making 'a conscious choice.' We have no reason to question these findings." (*Blair, supra,* 36 Cal.4th at p. 709.)

The same is true here. Like the defendant in *Blair*, Pierce — who had previous experience with the criminal justice system — insisted on representing himself and repeatedly reaffirmed his desire for self-representation throughout the trial court proceedings. (*Blair, supra,* 36 Cal.4th at pp. 704-705.) The written form Pierce signed is similar to the one in *Blair*: it advised Pierce of the "dangers and responsibilities of self-representation" (*Blair, supra,* 36 Cal.4th at p. 709) and "communicate[d] powerfully . . . the 'disadvantages of proceeding pro se,' [which] is all '*Faretta* requires.' [Citation.]" (*Sullivan, supra,* 151 Cal.App.4th at p. 546.) When the court asked Pierce whether he understood he was representing himself "and all of the consequences on [the] form[,]" Pierce replied, "Yes, ma'am." Finally, and as in *Blair*, Pierce could read and write. He ably represented himself throughout the case, "appeared to be of at least normal intelligence[,]" and persuaded the court he was capable of representing himself.[5] (*Id.* at p. 709.) We have reviewed the entire record and find no indication Pierce did not

---

[5] Pierce suggests his *Faretta* waiver was not knowing and intelligent because he "does not appear to have an extensive educational background or any legal training" and because he "appears to have severe behavioral/mental health issues." The record suggests otherwise. Pierce reported earning a college degree and displayed a rather sophisticated understanding of the criminal justice system. And although Pierce appears to have suffered from Tourette's Syndrome, nothing in the record suggests he was not competent to represent himself. (See *People v. Johnson* (2012) 53 Cal.4th 519, 530.)

7

understand what he was reading and signing when he completed the *Faretta* form. (*People v. Marshall* (1997) 15 Cal.4th 1, 24 [trial court's failure "to conduct a full and complete inquiry regarding a defendant's assertion of the right of self-representation" did not necessarily demonstrate waiver of counsel was not knowing and voluntary].)

That the form did not advise Pierce of the nature of the charges or the maximum sentence he faced does not alter our conclusion. Several courts have rejected this argument and we agree with their reasoning. (See *Conners*, *supra,* 168 Cal.App.4th at p. 454 [waiver of counsel was knowing and intelligent even though judge did not advise the defendant of potential maximum sentence before accepting waiver]; *Blair, supra*, 36 Cal.4th at p. 709, fn. 7 [failure to advise the defendant of potential defenses does not invalidate *Faretta* waiver]; *People v. Lawley* (2002) 27 Cal.4th 102, 140 [rejecting complaint that the court "did not sufficiently explore whether [the defendant] 'truly appreciated the enormity of the charges facing him'" and concluding waiver of counsel was knowing and voluntary]; *People v. Harbolt* (1988) 206 Cal.App.3d 140, 150 [no requirement to advise the defendant of penal consequences before accepting *Faretta* waiver].)

"[T]he record shows [Pierce] wanted to waive counsel, understood the essential risks of doing so, and chose to do so." (*Weber, supra,* 217 Cal.App.4th at p. 1060.) Having reached this conclusion, we need not evaluate the parties' claims regarding prejudice. (See *Burgener, supra,* 46 Cal.4th at p. 245.)

## II

### *Any Error in Failing to Readvise Pierce of His Right to Counsel After the Preliminary Hearing Was Harmless*

Pierce contends the court erred by failing to readvise him of his right to counsel after the preliminary hearing. A "defendant in felony proceedings shall be advised of the right to counsel on at least two distinct occasions prior to trial: first, when the defendant is brought before a magistrate and advised of the filing of the complaint [under section 859], and second, after the preliminary examination, when the defendant is arraigned . . . on the information [under section 987]." (*People v. Crayton* (2002) 28 Cal.4th 346, 360

8

(*Crayton*).)  The "language of section 987 sets forth no exceptions" to the rule.  (*Id.* at p. 361.)

We assume for the sake of argument the court erred by failing to readvise Pierce of his right to counsel after the preliminary hearing and obtain a new waiver of counsel. We conclude, however, any error is harmless.  "[W]hen a defendant charged with a felony has been fully and adequately advised at the . . . [arraignment on the complaint] of his . . . right to counsel throughout the proceedings (including trial) and the defendant has waived counsel under circumstances that demonstrate an intention to represent himself . . . both at the preliminary hearing and at trial, a superior court's failure to readvise the defendant and obtain a new waiver of counsel at the defendant's arraignment on the information in superior court, although erroneous under the governing California statute, does not automatically require reversal of the ensuing judgment of conviction." (*Crayton, supra,* 28 Cal.4th at p. 350.)  We reverse only if we find a reasonable probability Pierce was unaware of his right to be represented by appointed counsel at trial or that he would have accepted the appointment of counsel had the court made the statutorily required inquiry at arraignment.  (*Id.* at p. 366, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Here, the record demonstrates Pierce was aware of his right to be represented by counsel and wanted to represent himself.  The form Pierce signed at his initial arraignment explicitly informed him of his right to counsel at all stages of the proceedings, and warned him of the risks of representing himself.  Before trial, Pierce confirmed he had represented himself since his initial arraignment and "want[ed] that to continue."  He told the court he did not need "fancy clothes or a highfalutin lawyer" and requested an attorney only for the "narrowly defined purpose" of questioning him at trial. Pierce's "desire to represent himself was unwavering throughout the proceedings.  In light of the entire record . . . there can be no doubt that [Pierce] was aware of his right to appointed counsel at all stages of the proceedings and knowingly and voluntarily waived that right, insisting upon exercising his constitutional right to represent himself."

9

(*Crayton, supra,* 28 Cal.4th at p. 366.)  Any error in failing to readvise Pierce of his right to counsel after the preliminary hearing was harmless.  (*Ibid.*)

DISPOSITION

The judgment is affirmed.

_____

Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.