Filed 10/22/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GUSTAVO GUZMAN,<br><br>    Defendant and Appellant. | G065309<br><br>(Super. Ct. Nos. 20WM07206;<br>  30-2022-01290936)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Juliet O. Macauley, Judge. Affirmed.

Martin Schwarz, Public Defender, Adam Vining, Assistant Public Defender, and Lauren L. Wilson, Deputy Public Defender, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Kathryn Kirschbaum and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

# INTRODUCTION

The Legislature passed Assembly Bill No. 3070 (2019-2020 Reg. Sess.) (Assembly Bill 3070), effective January 1, 2021, because it found the procedures of *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*) and *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) to be ineffective in eliminating discriminatory exclusion of potential jurors. (Stats. 2020, ch. 318, § 1, subd. (b).) That legislation, codified at Code of Civil Procedure section 231.7, (section 231.7) created a new set of procedures and criteria for making, addressing, and ruling on objections to peremptory challenges. (Stats. 2020, ch. 318, § 2; see *People v. Wagstaff* (2025) 111 Cal.App.5th 1207, 1227, fn. 7.)

Subdivision (j) of section 231.7 (section 231.7(j)) makes the denial of an objection to a peremptory challenge subject to de novo appellate review and states, "[s]hould the appellate court determine that the objection *was erroneously denied*, that error shall be *deemed prejudicial*, the judgment shall be reversed, and the case remanded for a new trial."[1] (Italics added.)

We granted a petition by defendant Gustavo Guzman to transfer this matter from the Appellate Division of the Superior Court of California, County of Orange, in order to address the following issue: Whether the "deemed prejudicial" standard of section 231.7(j) applies when an objection to a peremptory challenge was determined to have been erroneously granted.

---

[1] Objections traditionally are either sustained or overruled. Section 231.7 sometimes uses the word "grant" in place of "sustain" and the word "denial" or "denied" in place of "overrule." We shall use the words grant and denial to maintain general consistency with section 231.7. When an objection to a peremptory challenge is granted, the challenge is invalid and the prospective juror remains on the jury venire; when an objection to a peremptory challenge is denied, the challenge is valid and the prospective juror is excluded from the jury.

We conclude, based upon the statutory language, statutory scheme, and legislative history, that the deemed prejudicial standard does not apply when the objection to the peremptory challenge was erroneously granted. Instead, when an objection to a peremptory challenge under section 231.7 is erroneously granted, traditional rules and standards regarding prejudicial error apply. We therefore affirm the judgment of the Appellate Division of the Superior Court.

## FACTS AND PROCEDURAL HISTORY

The following facts and procedural history are taken from the opinion of the Appellate Division in *People v. Guzman* (Feb. 2, 2025, Orange County Sup. Court App. Div. 30-2022-01290936) [nonpub. opn.] and are limited to events relevant to the issue presented.

"On May 29, 2020, the People filed a complaint charging defendant with resisting and obstructing an officer. (Pen. Code, § 148, subd. (a)(1), Count 1); domestic battery with corporal injury (Pen. Code, § 237.5, subd. (a), Count 2); and assault on a peace officer (Pen. Code, § 241, subd. (c), Count 3). Defendant pled not guilty to all counts.

"[¶] . . . [¶]

"During voir dire, defendant challenged Juror 122 for cause because of his experience with domestic violence as a child in foster care and work in law enforcement dealing with victims of domestic violence. The trial court denied the challenge for cause based on Juror 122's statements he could remain fair and impartial.

"Defendant then challenged Juror 122 peremptorily. The People objected pursuant to section 231.7, stating Juror 122 was a white male. Defense counsel stated the reasons for the peremptory challenge were similar

3

to the challenge for cause–he had a traumatic childhood involving domestic violence, he was involved in law enforcement and had significant interactions with domestic violence victims, and he was combative during voir dire. The People responded beliefs and opinions about police officers are presumptively invalid reasons for a peremptory challenge and there was no record of Juror 122's attitude towards defense counsel. The People also pointed out the juror would be the second white male defense counsel sought to remove. Defense counsel argued general attitudes, as opposed to distrust or negative experiences, toward law enforcement, was not a presumptively invalid reason.

"The trial court sustained the People's objection, clarifying Juror 122 indicated several times he could be fair and impartial. It also reasoned friendliness with certain cognizable groups is relevant and Juror 122 was friendly towards law enforcement. Juror 122 remained on the jury.

"[¶] . . . [¶]

"On September 22, 2022, the jury found defendant guilty on Count 1, guilty on the lesser included charge for Count 2 (Pen. Code, § 243, subd. (e)(1)), and not guilty on Count 3. On September 26, 2022, the trial court sentenced defendant to three years of informal probation." (*People v. Guzman, supra*, 30-2022-01290936.)

The Appellate Division reversed the judgment on count 1 but in all other respects affirmed. (*People v. Guzman, supra*, 30-2022-01290936.) The Appellate Division concluded the "deemed prejudicial" standard of section 231.7(j) does not apply to the erroneous grant of an objection to a peremptory challenge. (*People v. Guzman, supra*, 30-2022-01290936.) Although the People had conceded the trial court had erred by granting the objection to the peremptory challenge, the Appellate Division concluded

4

Guzman had not demonstrated prejudice from including Juror No. 122 on the jury. (*Ibid.*)

## DISCUSSION

### I.

### Peremptory Challenges and Section 231.7

The use of peremptory challenges to strike prospective jurors based on race and other protected characteristics is prohibited by the California Constitution and the United States Constitution. (*Batson, supra,* 476 U.S. at p. 88; *Wheeler, supra,* 22 Cal.3d at pp. 276-777.) This prohibition extends to both the prosecution and the defense. (*Georgia v. McCollum* (1992) 505 U.S. 42, 59.)

*Batson* and *Wheeler* created a three-step process which trial courts had traditionally used to evaluate a party's constitutional objection to an opposing party's peremptory challenge on the ground it was based on race. (See *People v. Gutierrez* (2017) 2 Cal.5th 1150, 1158.) "First, the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' [Citations.] Second, once the defendant has made out a prima facie case, the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes. [Citations.] Third, '[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.' [Citation.]" (*Johnson v. California* (2005) 545 U.S. 162, 168 (*Johnson*).)

Dissatisfaction with the *Batson/Wheeler* procedure's efficacy in eliminating discrimination led the Legislature to enact section 231.7. The Legislature found: "[T]he existing procedure for determining whether a peremptory challenge was exercised on the basis of a legally impermissible

5

reason has failed to eliminate . . . discrimination. In particular, the Legislature finds that requiring proof of intentional bias renders the procedure ineffective." (Stats. 2020, ch. 318, § 1, subd. (b).) The Legislature expressed an intent to "put into place an effective procedure for eliminating the unfair exclusion of potential jurors based on race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, through the exercise of peremptory challenges." (*Id*., ch. 318, § 1, subd. (a).)

Section 231.7, subdivision (a) states: "A party shall not use a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." To enforce that prohibition, section 231.7 sets forth a new procedure to replace the *Batson/Wheeler* one. Under this new procedure, "[a] party . . . may object to the improper use of a peremptory challenge" based on a "prospective juror's race" or "perceived" race. (§ 231.7, subds. (a) & (b).) "[U]pon objection . . . , the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (*Id*., subd. (c).) The trial court must "evaluate the reasons given to justify the peremptory challenge in light of the totality of the circumstances" identified in a nonexhaustive list. (*Id*., subd. (d)(1), (3).) In evaluating the reasons, the court "shall consider only the reasons actually

6

given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge."[2] (*Id.*, subd. (d)(1).)

Under the *Batson/Wheeler* test, the ultimate question for the trial court in ruling on an objection to a peremptory challenge is whether the party exercising the objection engaged in "purposeful discrimination." (*Johnson, supra*, 545 U.S. at p. 168 ["'[T]he trial court must . . . decide . . . whether the opponent of the strike has proved purposeful racial discrimination'"].) Under section 231.7, in contrast, the trial court must sustain the objection to the peremptory challenge "[i]f the court determines there is a substantial likelihood that *an objectively reasonable person* would view race . . . as a factor in the use of the peremptory challenge." (§ 231.7, subd. (d)(1), italics added.) An "objectively reasonable person" is defined as one who is "aware that unconscious bias, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in the State of California." (*Id.*, subd. (d)(2)(A).)

If the trial court grants an objection to a peremptory challenge, the court must take one or more of the corrective actions identified in section 231.7, subdivision (h), which include "[s]eat the challenged juror." (*Id.*, subd. (h)(3).)

Section 231.7(j) addresses three issues regarding appellate review of the denial of an objection to a peremptory. First, section 231.7(j) sets forth the applicable standard of review: "[T]he denial of an objection made under this section shall be reviewed by the appellate court de novo,

---

[2] Section 231.7 includes a list of presumptively invalid reasons for a peremptory challenge and a list of reasons based on juror appearance and behavior which are presumptively invalid unless the trial court is able to confirm the asserted behavior occurred. (§ 231.7, subds. (e), (g).)

with the trial court's express factual findings reviewed for substantial evidence." Second, section 231.7(j) bars the reviewing court from imputing any findings to the trial court, limits appellate review to the reasons actually given for the peremptory challenge, and directs the reviewing court not to speculate to or consider other reasons that were not given.

Finally, the last sentence of section 231.7(j), which is the subject of this appeal, states: "Should the appellate court determine that the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial."

## II.

### The Deemed Prejudicial Standard of Section 231.7 Applies Only to Denials of Objections to Peremptory Challenges

A. *Standard of Review and Principles of Statutory Interpretation*

"General standards of appellate review apply to appeals transferred from the superior court appellate division for decision in the Court of Appeal." (*Huntington Continental Townhouse Assn., Inc. v. Miner* (2014) 230 Cal.App.4th 590, 598.) The interpretation of a statute is a question of law which we review de novo. (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

Our fundamental task in construing statutes is to interpret them in a way that gives effect to the Legislature's intent. (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837.) "'Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning.'" (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) We consider the statutory language in the context of the statute

8

as a whole and its overall scheme. (*People v. Lewis, supra,* 11 Cal.5th at p. 961; *People v. Valenzuela* (2019) 7 Cal.5th 415, 423.)

If the statute's language is unambiguous then its plain meaning controls. (*People v. Scott* (2014) 58 Cal.4th 1415, 1421.) If the statute's language is unclear, ambiguous, or susceptible to more than one reasonable interpretation, we may look at extrinsic sources, including legislative history, as a guide to construing the statute. (*Ibid.*)

B. *Plain Language*

Section 231.7(j) states, "the denial of an objection made under this section shall be reviewed by the appellate court de novo," and "should the appellate court determine the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*) The words *denial* and *denied* are clear and unambiguous. The plain and express language in section 231.7(j) makes the "deemed prejudicial" standard applicable only to objections that were *erroneously denied.* The phrases "denial of an objection" and "the objection was erroneously denied" cannot reasonably be interpreted also to mean "granting an objection" and "the objection was erroneously granted." (*Ibid.*)

We presume the Legislature meant what it said in section 231.7 (*Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 55) and would have written section 231.7(j) to include *erroneously granted* objections if that were its intent. "[I]t is, of course, 'not our function . . . to add language or imply exceptions to statutes passed by the Legislature.'" (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1063 (*Rhodius*).)

Although no opinion addresses the issue presented here, in *People v. Hinojos* (2025) 110 Cal.App.5th 524, 541-544, the Court of Appeal

addressed the related issue of which standard of review applies to a trial court's decision to sustain or grant an objection under section 231.7. The court quoted from section 231.7 the de novo standard of review applicable to the denial of an objection and observed, "[t]he statute does not set forth the standard of review for a trial court's decision to *sustain* a section 231.7 objection, and to our knowledge no court has yet addressed this issue." (*Hinojos*, p. 541.) The court concluded a decision to grant an objection to a peremptory challenge is also subject to de novo review. The court did not reach that conclusion, however, by construing section 231.7(j) to apply to granting objections as well as denying them. Instead, the court turned to "traditional principles of appellate review" to conclude that granting an objection "presents a mixed question of law and fact" which "we review de novo." (*Hinojos*, pp. 541-542, 545.)

The reasoning of *Hinojos* supports the conclusion the deemed prejudicial standard of section 231.7(j) does not apply when an objection to a peremptory challenge is erroneously granted. Because the standard of review set forth in section 231.7(j) is expressly applicable only to erroneous denials of objections, the court in *Hinojos* turned to traditional principles of appellate review to determine applicable standard when objections are granted. Here, likewise, because the deemed prejudicial standard of section 231.7(j) is expressly applicable only to erroneous denials of objections, we turn to traditional rules governing prejudicial error when objections are granted. As we shall explain in subsection III, under those rules, error in granting an objection to a peremptory challenge is not subject to automatic reversal.

10

C. *Statutory Scheme*

We also consider the language of section 231.7(j) in the context of the entire statute and the statutory scheme as a whole. (*People v. Reynoza* (2024) 15 Cal.5th 982, 990.) In doing so we give significance to every word, phrase, and part of an act to carry out the Legislature's intent. (*Ibid.*)

The statutory scheme of section 231.7 reflects a concern for the improper removal of jurors. Section 231.7 begins with, "[a] party shall not use a peremptory challenge to *remove* a prospective juror on the basis of the prospective juror's [membership in a cognizable group] or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a), italics added.) Subdivision (b) states a "party" can object to an improper peremptory challenge if the juror's removal falls under subdivision (a). (§ 231.7, subd. (b).) Thus, in keeping with *Georgia v. McCollum, supra*, 505 U.S. 42, section 231.7 recognizes the party exercising the peremptory could be defense counsel, and the party seeking to prevent removal of the juror could be the prosecution. Section 231.7 as a whole is structured to limit the use of peremptory challenges and make removal of jurors for discriminatory purposes more difficult. Subdivision (c) requires the party exercising the peremptory challenge, upon objection, to state the reasons for the challenge. Subdivision (d)(1) requires the trial court to evaluate the reasons given considering "the totality of the circumstances" to determine whether there was a substantial likelihood that a reasonable person would view an impermissible ground as a factor in the use of the challenge. The court is restricted to the reasons given in support of the peremptory challenge. (*Id.*, subd. (d)(1).) Subdivision (d)(3) is a list of circumstances the court may

11

consider in making that determination. Subdivision (e) is a list of reasons "presumed to be invalid" unless the party exercising the challenge shows by clear and convincing evidence "that an objectively reasonable person would view the rationale as unrelated to [an impermissible ground]." Subdivision (g) is a list of apparent neutral reasons for exercising a peremptory challenge which have become "associated with improper discrimination in jury selection." Those reasons are presumptively invalid unless the trial court can confirm "the asserted behavior occurred." (*Id.*, subd. (g).)

Section 231.7 replaced the *Batson/Wheeler* "purposeful discrimination" standard with a narrower, objective standard. Thus, section 231.7 permits a trial court to grant an objection to a peremptory challenge only "[i]f the court determines there is a substantial likelihood that *an objectively reasonable person* would view race . . . as a factor in the use of the peremptory challenge." (§ 231.7, subd. (d)(1), italics added.) Section 231.7, subdivision (d)(1) states "[t]he court need not find purposeful discrimination to sustain the objection."

Thus, by the time we arrive at subdivision (j) it is clear the scheme of section 231.7 is designed to target the improper removal of jurors, not the improper seating of them. It makes sense then that section 231.7(j) means exactly what it says: Only the erroneous denial of an objection to the exercise of a peremptory challenge, which would lead to a juror removal, is deemed to be prejudicial.

Although the deemed prejudicial provision of section 231.7(j) is not susceptible to more than one interpretation, we nonetheless consider the legislative history of section 231.7.

D. *Legislative History*

Section 231.7 was enacted as part of Assembly Bill 3070. The final form of Assembly Bill 3070 expressed the following legislative intent: "It is the intent of the Legislature to put into place an effective procedure for eliminating the unfair *exclusion* of potential jurors based on [their membership in a cognizable group] or perceived membership in any of those groups, through the exercise of peremptory challenges." (Stats. 2020, ch. 318, § 1, subd. (a), italics added.) This intent to eliminate unfair *exclusion* of potential jurors is repeated in subdivision (b) of the statutory version of Assembly Bill 3070: "The Legislature finds that peremptory challenges are frequently used in criminal cases to *exclude* potential jurors from serving based on their [membership in a cognizable group] or perceived membership in any of those groups, and that *exclusion* from jury service has disproportionately harmed African-Americans, Latinos, and other people of color." (Stats. 2020, ch. 318, § 1, subd. (b), italics added.)

The legislative intent to prevent improper exclusion of jurors is reflected throughout Assembly Bill 3070, which established procedures, codified in section 231.7, to identify improper juror exclusion in the use of peremptory challenges. This intent was expressed by the author of Assembly Bill 3070, who wrote in support of the bill that "California citizens are too often *excluded* from serving on juries because of their race, ethnicity, gender, sexual orientation, or other legally-protected characteristics." (Assem. Com. on Judiciary, Analysis of Assem. Bill. No. 3070 (2019-2020 Reg. Sess.) as amended May 4, 2020 [committee hearing held on May 11, 2020], p. 6, italics added.) Assembly Bill 3070's author also wrote: "AB No. 3070 aims to remedy the discriminatory use of peremptory challenges. . . against prospective jurors." (*Ibid*.)

13

The Assembly Committee on Judiciary's comments also express this purpose and intent: "This bill seeks to improve upon the current court procedure, hearings held in response to what are referred to as *Batson/Wheeler* motions, that are used to evaluate whether the *dismissal* of a prospective juror via a peremptory challenge was unlawfully discriminatory." (Assem. Com. on Judiciary, Analysis of Assem. Bill. No. 3070, *supra*, as amended May 4, 2020, p. 5, italics added.)

The first draft of Assembly Bill 3070, which was introduced on February 21, 2020, included the provision that "[s]hould the appellate court determine that the objection was erroneously denied, that error shall be deemed [to be] prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (Assembly Bill 3070, as introduced Feb. 21, 2020.) Assembly Bill 3070 was amended seven times before its passage in September 2020. The "deemed prejudicial" provision remained unchanged from the first to final iteration of Assembly Bill 3070 and was codified in section 231.7(j). The lack of any changes throughout the legislative process to the deemed prejudicial standard found in the initial version of Assembly Bill 3070 further demonstrates the Legislature intended that standard would apply only to erroneous denials of an objection to a peremptory challenge.

When determining legislative intent, we presume the Legislature was aware of existing laws and judicial decisions at the time of the enactment. (*Rhodius, supra*, 17 Cal.5th at p. 1062; *People v. Overstreet* (1986) 42 Cal.3d 891, 897.) Assembly Bill 3070 was introduced and enacted in 2020. At that time, *People v. Singh* (2015) 234 Cal.App.4th 1319 (*Singh*) was on the books. In *Singh*, the Court of Appeal held that an error in overruling a peremptory challenge (i.e., sustaining or granting an objection to the peremptory challenge) is not a structural violation of a defendant's

14

constitutional right to due process and therefore is subject to a harmless error analysis. (*Singh,* at pp. 1330-1331.) The *Singh* court explained that erroneous exclusion of a juror is structural, and therefore deemed prejudicial, because it is impossible to determine the effect on the trial of that excluded juror. (*Id.* at p. 1331.) In contrast, when a juror is erroneously included, a defendant can seek redress if that juror "in fact acted in any manner during deliberations that is *inconsistent* with an unbiased factfinder." (*Ibid.*)

The legislative history of Assembly Bill 3070 does not mention *Singh* or any intent to overrule that decision; there is no mention of *Singh* at all within the legislative history or section 231.7 itself. The presumption that the Legislature was aware of the *Singh* decision when it enacted Assembly Bill 3070 supports the conclusion that the Legislature intended to limit the scope of the "deemed prejudicial" standard of section 231.7(j) to erroneous exclusion of jurors.

Guzman argues section 231.7 must be broadly construed, and indeed that is what the Legislature intended. (Stats. 2020, ch. 318, § 1, subd. (c) ["It is the intent of the Legislature that this act be broadly construed"].) But broad construction "can only go so far." (*Soria v. Soria* (2010) 185 Cal.App.4th 780, 789.) Broad construction cannot be used to add language to the statute (*Rhodius, supra*, 17 Cal.5th at p. 1063), defeat fundamental rules of statutory interpretation (*Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.* (2025) 17 Cal.5th 510, 530), or justify an otherwise erroneous construction (*North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 187).

15

### III.

### Guzman Has Not Demonstrated Prejudicial Error

The Appellate Division noted "[t]he People concede error" in granting the objection to Guzman's peremptory challenge to Juror No. 122 "because law enforcement is not a cognizable class under section 231.7 and there is no language in the statute concerning a prospective juror's friendliness toward law enforcement." (*People v. Guzman, supra,* 30-2022-01290936 at p. 6.) Guzman has failed to demonstrate, however, that he suffered prejudice from the error.

Traditional rules and standards of prejudicial error apply when objections to peremptory challenges are granted. "Absent structural error, it is the well-established California rule in both civil and criminal appeals that the judgment is *presumed correct*, and a record silent on a point cannot overcome this presumption." (*Singh, supra,* 234 Cal.App.4th at p. 1330.) The Court of Appeal in *Singh* analyzed California Supreme Court and United States Supreme Court decisions,[3] and a decision of the Kansas Supreme Court,[4] and from them concluded error in overruling a peremptory challenge "is not structural and therefore a defendant must affirmatively demonstrate prejudice." (*Singh, supra,* 234 Cal.App.4th at pp. 1329-1331, 1332.)

We agree. "An error is "'structural," and thus subject to automatic reversal, only in a "very limited class of cases,'" such as the complete denial of counsel, a biased decision maker, racial discrimination in jury selection,

---

[3] *Ross v. Okla.* (1988) 487 U.S. 81; *Rivera v. Illinois* (2009) 556 U.S. 148; *People v. Black* (2014) 58 Cal.4th 912 (*Black*); *People v. Mil* (2012) 53 Cal.4th 400 (*Mil*).

[4] *State v. Carr* (2014) 300 Kan. 1.

denial of self-representation at trial, denial of a public trial, and a defective reasonable-doubt instruction. [Citation.] What unites this class of errors is "'a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" . . . [T]hese errors deprive defendants of "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'"" (*Mil, supra,* 53 Cal.4th at p. 410; accord *Ari. v. Fulminante* (1991) 499 U.S. 279, 309-310.) Overruling a peremptory challenge—i.e, granting an objection to a peremptory challenge—"does not result in any fundamental unfairness, or interference with the reliability of the jury's factfinding function." (*Singh, supra*, 234 Cal.App.4th at p. 1331.)

We do not determine whether the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 or *Chapman v. California* (1967) 386 U.S. 18 is applicable because Guzman has not demonstrated any prejudice whatsoever. "A properly preserved claim that a trial court erroneously limited a defendant's free exercise of peremptory challenges and thereby caused the participation of a juror whom the defendant found objectionable (as the result of erroneous denials of challenges for cause that taxed his full complement) is not reversible error absent a showing that the defendant's right to an impartial jury was thereby affected; this requires a showing that the juror was either biased or otherwise properly subject to a challenge for *cause*." (*Singh, supra*, 234 Cal.App.4th at p. 1332, fn. omitted, citing *Black, supra*, 58 Cal.4th at pp. 914, 916–917, 920.)

Guzman has not demonstrated that Juror No. 122 was biased or subject to a valid challenge for cause. Several times during voir dire, Juror No. 122 stated he could be fair and impartial. Based on those assurances, the

17

trial court denied Guzman's challenge for cause. In the appellate division, Guzman did not contend that denial was erroneous or that Juror No. 122 was subject to a challenge for cause.

The jury verdict itself shows Guzman suffered no prejudice from the seating of Juror No. 122. According to the Appellate Division, Guzman's reasons for exercising a peremptory challenge against Juror No. 122 were that he had had a traumatic childhood involving domestic violence, had been involved in law enforcement, and had had significant interactions with domestic violence victims. (*People v. Guzman, supra*, 30-2022-01290936 at p. 2.) But the jury, with Juror No. 122 participating, acquitted Guzman of domestic battery with corporal injury (the greater charge on count 2) and of assault on a peace officer (count 3).

Guzman argues it would be impossible to prove whether the seating of a particular juror influenced the outcome at trial. Establishing prejudice from the inclusion of a jury might be difficult, but it is not necessarily impossible. Juror declarations, obtained after the jury has been discharged, are common means of obtaining evidence that a particular juror "in fact acted in any manner during deliberations that is inconsistent with an unbiased factfinder" (*Singh, supra*, 234 Cal.App.4th at p. 1331), or that the juror's biases influenced the jury's decision. Guzman did not produce any such juror declarations. Further, difficulty in establishing prejudice is not what makes an error structural (see *Mil, supra*, 53 Cal.4th at p. 410), and therefore is not a sufficient reason in itself for automatic reversal (*Singh*, at p. 1331).

## DISPOSITION

The judgment of the Appellate Division is affirmed.


SANCHEZ, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


MOORE, J.